IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

YUE YU, et al.,

        Plaintiffs,

   vs.

                            No. CIV 97-1491 MV/WED

DOUGLAS BROWN, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Judgment on the Pleadings, filed May 4, 1998 **[Doc. 18]**. The Court, having considered the motion, response, relevant law, and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**, as explained below.

## BACKGROUND

Plaintiff Yue Yu ("Yu"), on behalf of herself and a purported class of similarly situated individuals, brings this action requesting this Court to issue an affirmative injunction and/or writ of mandamus commanding officials at the Immigration and Naturalization Service ("INS") to act on their applications for "Special Immigrant Juvenile Status" and for adjustment of status to lawful permanent resident. For the purpose of resolving this motion, the Court assumes the truth of the following facts as plead in the Complaint:

Yu, a citizen of China, is unmarried and was under 21 years of age at the time the Complaint was filed.[1] On July 17, 1996, the First Judicial District of New Mexico entered an order appointing Dwight Barrus as Yu's permanent guardian. The court concluded that Yu is dependent on the juvenile court and found Yu eligible for long-term foster care and permanent guardianship. The court further found that it was in Yu's best interest that she be a dependent of the court, under the guardianship of Barrus, and that it was not in her best interest to be returned to China. At the filing of the Complaint, Yu remained dependent on the juvenile court and remained under the guardianship of Barrus.[2]

The Immigration and Nationality Act ("INA") provides for "special immigrant juvenile status" ("SIJ status") for minors who have been declared dependant on a juvenile court and found eligible for long-term foster care, and for whom a judge has determined that it would not be in the minor's best interest to return to her country of origin. 8 U.S.C. § 1101(a)(27)(J). To qualify for the SIJ status, the individual must be under 21 and unmarried. *Id*. The INA further provides that a minor with SIJ status may apply for adjustment of status to that of lawful permanent resident ("LPR") and may obtain an immigrant visa regardless of numerical limitations on the number of visas allotted to the minor's country of orign.[3] 8 U.S.C. § 1255.

---

[1]Yu's INS application, attached to her Response to Defendant's Motion for Judgment on the Pleadings, indicates that her date of birth is April 2, 1977, making Yu currently 21 years old. The parties have failed to brief the significance of this fact.

[2]Again, the parties have failed to brief the current status of Yu's guardianship now that she is 21 years old.

[3]To be eligible to adjust status to that of lawful permanent resident, an applicant must demonstrate that a visa is immediately available and is usually constrained by the number of visas allotted to the applicant's country of origin.

Yu filed an application for SIJ status and for adjustment to LPR status on August 21, 1996. According to the Complaint, no action was taken on the application. The Complaint further states that each member of the proposed class has had an SIJ application pending with INS for more than one year. Further, on information and belief, the Complaint alleges that INS previously completed processing SIJ applications in six months. Based on the forgoing, the Complaint asserts that INS has unreasonably delayed in processing the SIJ applications. The Complaint requests that the Court:

(a) compel Defendants and those acting under them to perform their duty to act on the Special Immigrant Juvenile Status Applications filed by Yu and the members of the Plaintiff class; [and]

(b) compel Defendants and those acting under them to allocate sufficient personnel to the Albuquerque Suboffice to process and act on the Special Immigrant Juvenile Status Applications filed by Yu and the members of the Plaintiff class . . . ."

Complaint, Prayor for Relief, p. 9.

In addition to the forgoing, Defendants have attached to their motion an affidavit from an INS employee indicating that Yu's application did not contain a set of fingerprints which conformed to INS requirements. By letter dated June 9, 1997 (nearly 10 months after Yu filed her application), INS informed Yu of the problem and that she had 87 days to correct it. The letter was returned unopened as Yu had moved without providing a forwarding address. After the filing of the Complaint in this action, INS discovered a problem with Yu's medical records which were communicated to Yu's attorney. On or about January 30, 1998, Yu submitted proper fingerprints. The affidavit fails to state whether the problem with the medical records was cured.

Yu's Response to Defendant's Motion also includes the affidavit of her attorney as well as her SIJ Application. Yu's attorney states that he prepared Yu's SIJ application and entered a Notice of Appearance in the matter when he filed the application with INS. Despite the fact that he was

attorney of record and despite a regulation requiring INS to communicate all deficiencies in an application to both the individual and her attorney, INS never notified Yu's attorney of the problem with her fingerprints until this action was commenced. Further, Yu's attorney states that the problem with the fingerprints provided was that Yu's birth date was inadvertently left off the form. The birth date was however available on numerous other documents in the application, including Yu's birth certificate.[4]

Defendants now move for judgment on the pleadings, or in the alternative to dismiss for lack of subject matter jurisdiction. Plaintiffs resist, arguing that the Court has federal question jurisdiction pursuant to the Mandamus Act, the Administrative Procedures Act and the INA, that the Complaint successfully states a claim, and that Defendants are not entitled to judgment as a matter of law.

## STANDARDS OF REVIEW

### A.    Motion For Judgment on Pleadings

A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. *Mock v. T .G. & Y.*, 971 F.2d 522, 528 (10th Cir. 1992). In reviewing a defendant's Rule 12(c) motion, the court assumes the veracity of the "well-pleaded factual allegations" in the complaint and draws all reasonable inferences in the plaintiff's favor. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987);  *see Zinermon v. Burch*, 494 U.S. 113, 118 (1990). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*,  *Davis v. Scherer*, 468 U.S. 183  (1984). The court may dismiss a case

---

[4]The Court will consider the information in these affidavits only as it pertains to subject matter jurisdiction, not in determining whether judgment on the pleadings is appropriate.

for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his theory of recovery that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In order to grant a motion for judgment on the pleadings, it must be apparent that there are no issues fact and that only questions of law exist. 5A Charles A. Wright & Arthur Miller, Federal Practice and Procedure, § 1367 at 509-10 (1990). The harsh remedy of dismissal is to be used cautiously; courts have an obligation to promote the liberal rules of pleading as well as to protect the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989). When granting Rule 12(c) motions, courts may give leave to amend and "may dismiss causes of action rather than grant judgment." *Moran v. Peralta Community College Dist.*, 825 F. Supp. 891, 893 (N. D. Cal. 1993) (citing *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1978)).

**B.      Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party seeking to invoke a federal court's jurisdiction sustains the burden of establishing that such jurisdiction is proper. *Penteco Corp. v. Union Gas System, Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction typically take two forms: a facial challenge or a factual challenge. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). A facial challenge is an attack on jurisdiction that questions the sufficiency of the complaint.

*Id.* In reviewing a facial attack on a complaint, the court must accept the allegations in the complaint as true. A factual attack on subject matter jurisdiction challenges the facts upon which subject matter jurisdiction depends. *Id.* In reviewing a factual attack on subject matter jurisdiction, a court may not presume the truthfulness of the complaint's factual allegations but must go beyond the allegations and evaluate the evidence presented by the parties. *Id.* While the court may refer to evidence extraneous to the complaint in making appropriate factual findings on jurisdictional issues, it generally cannot convert a 12(b)(1) motion into one for summary judgment. *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir. 1987).

A court, however, is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when "resolution of the jurisdictional question is intertwined with the merits of the case." *Holt,* 46 F.3d at 1003; *Wheeler*, 825 F.2d at 259 n.5. "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt,* 46 F.3d at 1003.

## ANALYSIS

Because federal courts are courts of limited jurisdiction, the Court will begin with the numerous jurisdictional challenges raised by Defendants. Having concluded that the Court does have subject matter jurisdiction over this controversy and that it is otherwise properly before the Court, the Court will then address Defendants' argument that they are entitled to judgment as a matter of law. The Court concludes that the Complaint successfully states a cause of action and that Defendants are not entitled to judgment in their favor on the pleadings.

## A.    Jurisdictional Challenges

Defendants raise a series of challenges to this Court's jurisdiction over this dispute. Defendant's argue that this Court has no jurisdiction because: (1) the Mandamus Act and the Administrative Procedures Act do not provide a "separate" grant of jurisdiction; (2) the decision at issue is discretionary not mandatory; (3) the Plaintiff did not exhaust her administrative remedies; (4) the case is not ripe for review; and (5) the named Plaintiff has not plead irreparable injuries. In addition, Defendants assert that the 1997 amendments to the INA prevent judicial review of this kind. The Court will address the first collection of arguments together as they all reach the elements necessary for establishing jurisdiction to review unreasonably delayed agency action. Finding that the Court does have jurisdiction over this dispute pursuant to federal question jurisdiction and the APA, the Court will then address Defendants' argument that the amendments to the INA have stripped this Court of jurisdiction. Finding Defendants' arguments unpersuasive, the Court concludes that it does have subject matter jurisdiction over this case.

### 1.    Jurisdiction to Review Delayed Agency Action

Plaintiffs base subject matter jurisdiction in this case on federal questions jurisdiction, 28 U.S.C. § 1331, the INA, the Administrative Procedures Act (APA), 5 U.S.C. § 555(b), 706(1), and the Mandamus Act, 28 U.S.C. § 1361. Defendants assert that federal question jurisdiction does not exist because Plaintiffs do not have a right to sue under the INA and because the APA and the Mandamus Act do not provide "independent" grounds for jurisdiction. Although Defendants arguments are, in isolation, correct, they fail to divest this Court of subject matter jurisdiction over this controversy.

The Mandamus Act provides that, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. To be entitled to mandamus relief, the plaintiff must establish (1) that his or her claim is "clear and certain"; (2) that the duty owed is "ministerial and so plainly prescribed as to be free from doubt;" and (3) that no other adequate remedy is available. *Johnson v Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990); *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994); *Jarecki v. United States*, 590 F.2d 670, 674 (7th Cir. 1974); *Sze v. INS*, 1997 WL 446236, *4 (N.D. Cal. 1997) (case challenging unreasonable delay in processing LPR applications); 2 Am. Jur. 2d Administrative Law § 555 (1994); 13 A.L.R. Fed. § 145, Construction and Application of 28 U.S.C. § 1361 Conferring on Federal District Courts Original Jurisdiction of Actions in Nature of Mandamus to Compel Federal Officer, Employee, or Agency to Perform Duty Owed to Plaintiff (1972). "Mandamus relief is appropriate only when the person seeking such relief can show a duty owed to him by the government official to whom the writ is directed that is ministerial, clearly defined and peremptory." *Carpet, Linoleum and Resilient Tile Layers Local 419 v. Brown*, 656 F.2d 564, 566 (10th Cir.1981) (quoting *Schulke v. United States*, 544 F.2d 453, 455 (10th Cir. 1976)); *Wilbur v. United States*, 281 U.S. 206, 218-29 (1930) ("Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command, it is regarded as being so far ministerial that its performance may be compelled by mandamus . . . .").

The Administrative Procedure Act provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it . . . ." 5 U.S.C. § 555(b). The APA further provides that

the federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. s 706(1). As the Tenth Circuit recently pointed out, the APA prohibits both agency action unlawfully withheld *and* agency action unreasonably delayed. *Forest Guardians v. Babbitt*, __ F.3d __, 1998 WL 889368 *8 (10th Cir. 1998). Thus, the APA gives rise to a legally enforceable right to the completion of administrative agency action within a reasonable time, not merely a right to have the agency take some action at all. *Id.*; *Deering Milliken, Inc. v. Johnston*, 295 F.2d 856, 861 (4th Cir. 1961).

Seeking to harmonize the Mandamus Statute with the APA, the Tenth Circuit has held that, since mandamus requires that no other remedy be available and the APA provides a means of challenging unreasonably delayed agency action, technically mandamus is no longer available in such cases. *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997); *Western Shoshone Business Council v. Babbitt*, 1 F.3d 1052, 1059 (10th Cir.1993). However, the court has also recognized that the mandatory injunction authorized under the APA "is essentially in the nature of mandamus relief." *Mt. Emmons*, 117 F.3d at 1170; *Estate of Smith v. Heckler*, 747 F.2d 583, 591 (10th Cir.1984). "The two statutes are, after all, merely different means of 'compelling an agency to take action which by law it is required to take.'" *Hernandez-Avalos v. INS*, 50 F.3d 842, 844 (10th Cir. 1995).

Thus, in evaluating claims of unreasonable agency delay which seek either mandamus or a mandatory injunction under the APA, or both, the Tenth Circuit applies the same principles and standards, both to determine jurisdiction over the claim and to assess the merits of the claim. *Id.* at 844. With regard to jurisdiction, the Tenth Circuit, along with most other courts, has held that courts may entertain challenges to unreasonably delayed agency action on the basis of § 1331 jurisdiction

and § 706(1) of the APA. *Carpet*, 656 F.2d at 567. The *Carpet* court acknowledged that the Supreme court has held that the APA does not provide an "independent basis" for federal subject matter jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977). However, the rationale behind the *Califano* decision compels the conclusion that § 1331 provides subject matter jurisdiction over challenges to unreasonably delayed agency action. *See Carpet*, 656 F.2d at 567. *Califano*'s holding that the APA does not provide an independent basis for subject matter jurisdiction to challenge agency actions was based on the then recent amendments to § 1331 which eliminated the amount in controversy requirement in suits against the federal government or its agencies. *Califano*, 430 U.S. at 107. The court stated, "[t]he obvious effect of this modification, subject only to preclusion-of-review statutes created or retained by Congress, is to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate." *Id*. The court continued,

> [t]his understanding was made explicit by the Senate Judiciary Committee: "An anomaly in Federal jurisdiction prevents an otherwise competent United States district court from hearing certain cases seeking 'nonstatutory' review of Federal administrative action, absent the jurisdictional amount in controversy required by 28 U.S.C. section 1331, the general 'Federal question' provision. These cases 'arise under' the Federal Constitution or Federal statutes, and the committee believes they are appropriate matters for the exercise of Federal judicial power regardless of the monetary amount involved." S.Rep.No. 94-996, p. 12 (1976) (emphasis supplied); see H.R.Rep.No. 94-1656, p. 13 (1976); U.S.Code Cong. & Admin.News 1976, p. 6121.

*Id*. Based on *Califano*'s interpretation of § 1331, the *Carpet* court concluded that federal courts have federal question jurisdiction over claims which require the interpretation of federal statutes but which are not pursued as causes of action under that statute. *Carpet*, 656 F.2d at 567; *see also Hernandez-Avalos*, 50 F.3d at 846 (a plaintiff "who has alleged a cause of action under the APA or the

Mandamus Act need not rely upon an implied right of action under any other statute."). In other words, § 1331 provides jurisdiction over cases such as this, "cases seeking 'nonstatutory' review of Federal administrative action." *Id*.; *Califano*, 430 U.S. at 107. Because, in cases such as this, the APA provides an enforceable legal right to agency action within a reasonable time, and the duty of the agency is proscribed by federal statute requiring interpretation of federal law, § 1331 and APA § 706(1) combine to provide federal subject matter jurisdiction over the controversy. The only limitation to this jurisdiction is when Congress has specifically precluded judicial review. *Califano*, 430 U.S. at 107; *see also* 13 A.L.R. Fed. § 145, Construction and Application of 28 U.S.C. § 1361 (jurisdiction under mandamus statute over agency action only lacking if judicial review specifically precluded by statute). "Moreover, the exception to judicial review under the APA is narrowly construed and arises only where the agency action is committed to agency discretion or statutorily precluded." *Sze v. INS*, 1997 WL 446236, *5 (N.D. Cal. 1997) (citing *Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)).

Thus, courts have uniformly concluded that, "[w]hen an agency's recalcitrance, inertia, laggard pace or inefficiency sorely disadvantages the class of beneficiaries Congress intended to protect, judicial review . . . is in order." *In re Amer. Feder. of Gov. Employees, AFL-CIO*, 790 F.2d 116, 117 (D.C. Cir. 1986); *see Leedom v. Kyne*, 358 U.S. 184 (1958) (district court has jurisdiction under § 1331 to review decisions of NLRB which clearly violated statutory duty even though statute precludes review of final agency decisions); *Carpet*, 656 F.2d at 567; *Mt. Emmons*, 117 F.3d at 1170; *Oil, Chemical & Atomic Workers International Union v. Zeeger*, 768 F.2d 1480 (D.C.Cir.1985); *Air Line Pilots Association v. CAB*, 750 F.2d 81 (D.C.Cir.1984); *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C.Cir.1984)(*TRAC*); *Public Citizen Health Research Group*

*v. FDA*, 740 F.2d 21, 32 (D.C. Cir. 1984); *Jarecki v. United States*, 590 F.2d 670, 675 (7th Cir. 1974); *Deering Milliken,* 295 F.2d at 861 (citing cases); 2 Am. Jur. 2d Administrative Law § 379 (1994) ("Claims of unreasonable delay fall within the narrow class of interlocutory appeals from agency action over which courts appropriately should exercise their jurisdiction."). More to the point, courts have specifically recognized jurisdiction under § 1331 and the APA to hear challenges to INS delays in processing visa, LPR, and citizen applications. *Fraga v. Smith*, 607 F.Supp. 517, 520 (D. Or. 1985) (jurisdiction under APA for challenge to INS delay in processing citizen applications for foreign born citizens); *Sze v. INS*, 1997 WL 446236, *5 (N.D. Cal. 1997) (jurisdiction under 28 U.S.C. § 1331 for challenge to delay in processing naturalization applications because the issues in the case require interpretation of federal immigration statutes and regulations). "Our function in such cases is to assure the vitality of the congressional instruction that agencies conclude matters presented to them 'within a reasonable time.'" *Amer. Feder. of Gov. Employees, AFL-CIO*, 790 F.2d at 117.

To determine whether jurisdiction is appropriate in actions such as these challenging unreasonably delayed agency action, courts use the elements required to warrant relief to assess whether the plaintiff has established a prima facie case, warranting the exercise of jurisdiction over the dispute. *See Hernandez-Avalos*, 50 F.3d at 844; *Carpet*, 656 F.2d at 566-67; *Ocuto Blacktop and Paving Co, Inc. v. Perry*, 942 F.Supp. 783, 786 (N.D.N.Y. 1996). Thus, courts will exercise jurisdiction over a case such as this if the plaintiff has established (1) a clear duty owed to him or her by the agency; (2) a duty which is mandatory and not discretionary; and (3) a clear right to relief. *Hernandez-Avalos*, 50 F.3d at 844.

### a.    Duty to Plaintiff

The first and arguably most important question is whether Defendants owe Plaintiffs a duty. *See* 13 A.L.R. Fed. § 145 ("Where a duty has been found to exist, so has jurisdiction, and relief has generally followed.") The Tenth Circuit has concluded that the question of whether an agency owes the plaintiff a duty in cases such as this should be resolved by applying the "zone of interest test" for standing under the APA. *Hernandez-Avalos*, 50 F.3d at 844-45; *Carpet*, 656 F.2d at 566-67. In *Hernandez-Avalos*, the Tenth Circuit specifically rejected the argument that a plaintiff could seek a mandatory injunction under the APA and/or mandamus relief only if the plaintiff was afforded a cause of action under the relevant statute, in that case, the INA. *Hernandez-Avalos*, 50 F.3d at 846. Rather, "all a plaintiff seeking mandamus [and/or a mandatory injunction] in administrative litigation need show is that the interest he seeks to vindicate falls within the statutory zone of interests." *Id*. The court continued, "[g]iven the APA's generous provisions for review, the test operates as a fairly weak prudential restraint, requiring some non-trivial relation between the interests protected by the statute and the interest the plaintiff seeks to vindicate." *Id*.

> [T]he essential inquiry in the zone of interests test in this circuit is whether "Congress intended for a particular class of plaintiffs to be relied upon to challenge agency disregard of the law," and there need be "no indication of congressional purpose to benefit the would-be plaintiff."

*Id*. 846-47 (quoting *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1452 (10th Cir.1994)).

In the present case, the Court has no hesitation in concluding that the named Plaintiff Yu and the purported class of Plaintiffs fall within the zone of interest of the INA provisions for SIJ and LPR status. As the Supreme Court recently stated, "[w]hen the suit is one challenging government action or inaction, [and] the plaintiff is himself an object of the action (or foregone action) at issue, . . .

there is ordinarily little question that the action or inaction caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). Yu and other applicants for SIJ and LPR status are the logical and natural plaintiffs to challenge INS inaction in processing their applications. *Agbemaple v. INS*, 1998 WL 292441 *1 (N.D.Ill. 1998) (LPR applicant had standing to pursue mandamus action against INS for unreasonable delay in processing application because applicant's interests fell within "the zone of interests to be protected or regulated by the statute"); *Almendarez v. Sava*, 1988 WL 56923*2 (S.D.N.Y. 1988) (plaintiffs seeking writ of mandamus to compel INS to send approved visas to consul in Mexico had standing because "each has alleged 'concrete, redressable harm to her rights as an alien'"). Thus, Defendants owe Plaintiffs a duty because their interests fall within the zone of interests to be protected or regulated by the statue.

###### b.    Mandatory Duty to Act

Next, the Court must determine whether Defendants are subject to a mandatory duty to act or whether the action, or inaction, challenged is committed to the discretion of the agency. The Court cannot compel an agency to exercise its discretion in a particular manner. However, "[a]dministrative agencies do not possess the discretion to avoid discharging the duties that Congress intended them to perform." *Forest Guardians*, __ F.3d __, 1998 WL 889368 *8. Thus, "a court may require an agency to take action upon a matter, without directing how it shall act." *Id*. at 10 (quoting Attorney General's Manual on the Administrative Procedure Act, at 108 (1947)).

Defendants argue that in the present case Plaintiffs cannot establish a mandatory duty to act because granting adjustment to the status of LPR is within the discretion of the Attorney General.

Because they have no right to LPR status, the argument goes, they have no right to action on their application for LPR status.

This argument has been flatly rejected numerous times by other courts. *See Forest Guardians*, __ F.3d __, 1998 WL 889368 *8; *Mt. Emmons Mining*, 117 F.3d at 1172; *Atlantic & Gulf Stevedores, Inc. v. Donovan*, 274 F.2d 794, 798 (5ᵗʰ Cir. 1960); *Mastrapasqua v. Shaughnessy*, 180 F.2d 999, 1002 (2d Cir.1950); *Dabone v. Thornburgh*, 734 F.Supp. 195, 200 (E.D.Pa.1990). Defendant INS is apparently "confusing its discretion over how it resolves [the applications] . . . with its discretion over whether it resolves them." *Dabone*, 734 F.Supp. at 200. The fact that INS has discretion in the ultimate decision whether to grant LPR status is simply irrelevant to the question of whether it has discretion to refuse to act on Plaintiffs' applications.

All other courts addressing this question have held that INS has a non-discretionary duty to process applications for LPR status as well as all other immigration applications. *See Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1182 (Cir. Yr**) (INS has duty to act on application for visa though no duty to complete an investigation into whether visa fraudulently procured); *Rahman v. McElroy*, 884 F.Supp. 782, 787 (S.D.N.Y. 1995) ("Defendants have a clear duty to interview the plaintiffs [applicants for LPR], but they do not have to schedule those interviews on any particular day or in any special sequence."); *Fraga v. Smith*, 607 F.Supp. 517, 521 (D. Or. 1985) (INS required to process citizenship applications); *Agbemaple v. INS*, 1998 WL 292441 *2 (N.D.Ill. 1998) (duty to process LPR application within reasonable time). Tittle 8 U.S.C. § 1103 states that "[t]he Attorney General *shall* be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens." The Code of Federal Regulations further provide that each "applicant for adjustment of status *shall* be required to have a medical

examination," 8 C.F.R. § 245.5; that "[e]ach applicant for adjustment of status under this part *shall* be interviewed by an immigration officer," 8 C.F.R. § 245.6; and, most importantly, that "the applicant *shall* be notified of the decision of the director, and, if the application is denied, the reasons for the denial," 8 C.F.R. § 245.2. The language of the statute and these regulations is mandatory not discretionary. Thus, regardless of the ultimate decision, INS has a non-discretionary, mandatory duty to act on Plaintiffs' applications.

Defendants next argue that because there is no statutory deadline imposed on the processing of SIJ or LPR applications, they cannot be found to have unreasonably delayed. Defendants fail to comprehend that the APA itself imposes on them the duty to complete action on Plaintiffs' application within a reasonable time. *Forest Guardians*, __ F.3d __, 1998 WL 889368 *10; *Fraga*, 607 F.Supp. at 521 (APA requires INS to process citizenship applications within a reasonable time); *Singh v. Ilchert* 784 F.Supp. 759, 764 (N.D.Cal. 1992); *Agbemaple*, 1998 WL 292441 *2; *Sze v. INS*, 1997 WL 446236, *6-7. As the Tenth Circuit recently stated,

> if an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions--such as the APA's general admonition that agencies conclude matters presented to them 'within a reasonable time,' see 5 U.S.C. § 555(b)--a court must compel only action that is delayed unreasonably.

*Forest Guardians*, __ F.3d __, 1998 WL 889368 *10. "In our opinion, when an agency is required to act--either by organic statute or by the APA--within an expeditious, prompt, or reasonable time, § 706 leaves in the courts the discretion to decide whether agency delay is unreasonable." *Id*. As the Northern District of Illinois recently held in a nearly identical case,

> [a]lthough neither statute specifies a time by which an adjudication should be made, we believe that by necessary implication the adjudication must occur within a reasonable time. A contrary position would permit the INS to delay indefinitely.

> Congress could not have intended to authorize potentially interminable delays. We hold that as a matter of law, [the plaintiff] is entitled to a decision within a reasonable time, and that it is within the power of the court to order such an adjudication.

*Agbemaple v. INS*, 1998 WL 292441 *2; *see also* 2 Am. Jur. 2d Administrative Law § 379 ("Even though agency action may be subject to no explicit time limit, a court may compel an agency to act within a reasonable time."). Thus, Defendants owe Plaintiffs a non-discretionary duty to complete processing of Plaintiffs' applications in a reasonable time.

### c.    Clear Right to Relief

Finally, the Court must determine if Plaintiffs have a "clear and certain" right to mandamus or injunctive relief. This requires first that Plaintiffs have no other adequate remedy available to them, and second that Plaintiffs have established a *prima facie* case that Defendants have violated the non-discretionary duty owed them. In addition, the Court must consider whether there are any other impediments to review of Plaintiffs' claims, as raised by Defendants, including a lack of finality, failure to exhaust administrative remedies, or ripeness problems.

First, Plaintiffs have established that there is no other adequate remedy available for the harm they seek to redress. Plaintiffs here complain of the failure of INS to process their applications in a timely manner. They are afforded no means, other than resort to this Court, to challenge this alleged agency malfeasance. *See Forest Guardians*, __ F.3d __, 1998 WL 889368 *8, *Wan Shih Hsieh v. Kiley*, 569 F.2d at 1182; *Rahman*, 884 F.Supp. at 787; *Agbemaple*, 1998 WL 292441 *2. Thus, Plaintiffs have no recourse to vindicate their rights but a mandatory injunction and/or writ mandamus.

Second, Plaintiffs have established a *prima facie* case that Defendants have unreasonably delayed in processing their applications. The named Plaintiff Yu filed her application for SIJ and

LPR status on August 21, 1996, two and a half years ago. This is on its face an unreasonable amount of time to process a routine application and requires an explanation. The Complaint further pleads that the purported class of Plaintiffs have all had applications pending before INS for more than one year. This is also sufficient to establish that Defendants have unreasonably delayed in acting on Plaintiffs' applications. For the purposes of establishing jurisdiction or a motion to dismiss, Plaintiffs are entitled to the inference that a delay of this length is unreasonable. *See Agbemaple*, 1998 WL 292441 *2.[5]

Defendants raise numerous other challenges to Plaintiffs' core assertion that the failure to process their applications within a year is unreasonable. First, Defendants assert that they have been working on the named Plaintiff Yu's application, and therefore have not failed to act. Defendants again fail to comprehend that the APA grants Plaintiffs a right to have the agency *complete* work on their application within a reasonable time. Next, Defendants argue that because Yu's application was not complete (due to the error in her fingerprint card) until January 1998, her application has not been pending for more than a year. Setting aside INS' own role in this delay through its failure to contact Yu's attorney, it is now January 1999. Thus, Yu's application has now been pending for more than a year.

In addition, Defendants argue that Plaintiffs' claims are not properly before the Court because there is no final agency decision, they have failed to exhaust administrative remedies, they have not pled irreparable harm, and the claim of the named Plaintiff is not ripe. None of these arguments have merit. "By definition, a claim of unreasonable delay cannot await final agency action before judicial

---

[5]The Court discusses these findings in more detail below. *See* "B. Judgment on the Pleadings."

review, as the very lack of agency action is what gives rise to the complaint." 2 Am. Jur. 2d

Administrative Law § 379; *TRAC*, 750 F.2d at 75 (the lack of final order is the "gravamen" of the

complaint and does not preclude judicial review); *Public Citizen Health Research Group*, 740 F.2d

at 32; *Deering Milliken,*, 295 F.2d at 865 (4th Cir. 1961). Likewise, Plaintiffs have no administrative

remedies available to them until a final agency decision has been issued and "[i]t would indeed be

ironic if the very delay now under attack which prevents the exhaustion of administrative remedies

through no fault of the plaintiffs, constitutes a barrier to this Court's jurisdiction." *Caswell v.

Califano*, 583 F.2d 9, 14 (1st Cir. 1978). Irreparable harm is simply not an element of mandamus or

injunctive relief under the APA. *See Forest Guardians*, __ F.3d __, 1998 WL 889368 *8, *Wan Shih

Hsieh v. Kiley*, 569 F.2d at 1182.[6] And finally, Defendants' argument that the claim is not ripe is

based on their assertion that the named Plaitniff Yu's application had not been pending for more than

a year. As noted, Yu's application has now been pending for two and a half years and, even accepting

INS' argument that the application was not complete until the fingerprint card was re-filed, the

application has been pending for more than a year.

Accordingly, the Court holds that Plaintiffs have established a non-discretionary duty on the

part of INS and the other Defendants to process their SIJ and LPR applications in a reasonable time.

Further, Plaintiffs have established a *prima facie* case that Defendants have breached this duty. Thus,

---

[6]The cases cited by Defendants as requiring "irreparable injury" all address writs of mandamus directed at trial judge in an ongoing case. *In re Eisenberg v. U.S. District Court*, 910 F.2d 374, 375 (7th Cir. 1990); *In re Martinez-Catala*, 129 F.3d 213, 217 (1st Cir. 1997); *In re Rhone-Poulenc*, 51 F.3d 1293, 1295 (7th Cir. 1995). The only case which refers to a showing of irreparable harm in a case seeking a writ of mandamus for unreasonably delayed agency action is *In re City of Virginia Beach*, 42 F.3d 881, 884 (4th Cir. 1994). The Fourth Circuit apparently stands alone in considering irreparable harm an element of mandamus relief.

this Court does have jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 and the APA §706(1).

### 2.    1997 Amendments to INA

The last jurisdictional obstacle which Defendants point to is the 1997 Amendments to the INA. As amended, 8 U.S.C. § 1252, entitled "Judicial review of orders of removal," provides, in pertinent part, as follows:

> (g) Exclusive jurisdiction
>
> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Defendants argue that this provision strips this Court of jurisdiction to hear Plaintiffs' claims.

There is a well settled presumption in favor of interpreting statutes to allow judicial review of administrative action. *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991); *Safarian v. Reno*, 968 F.Supp. 1101, 1106 (E.D. La. 1997). This presumption may be overcome if there is clear evidence of Congressional intent to prohibit judicial review. *Block v. Community Nutrition Inst.*, 467 U.S. 340, 349 (1984). Further, exceptions to judicial review of agency action under the APA are narrowly construed. *See Overton Park*, 401 U.S. at 410.

As both the title and the text of § 1252(g) make clear, the statute broadly limits judicial review of "removal orders" and all actions taken in conjunction with such orders. Whether or not the failure to institute removal proceedings would qualify as an action, thereby prohibiting challenges similar to the present one to INS failure to institute removal proceedings, is an interesting but irrelevant question. Plaintiffs are currently challenging the failure of the INS to act with reasonable

20

promptness in processing their applications for SIJ and LPR status. The present case has nothing to do with removal orders. If Congress intended to limit all judicial review of any INS action or in action, on any matter before the agency, it could have done so. However, by limiting judicial review of "removal orders" it specifically left intact judicial review of all other matters properly before the Court. *Cf. Hernandez-Avalos*, 50 F.3d at 844-45 (pursuant to prior § 1252, APA does not apply to adjudications regarding *deportation*). Thus, the Court has jurisdiction over Plaintiffs' claims, notwithstanding the 1997 Amendments to the INA.

### B.    Judgment on the Pleadings

Finally, Defendants assertion that they are entitled to judgment in their favor as a matter of law must fail. The Court has already found for jurisdictional purposes that Plaintiffs successfully state a cause of action in that they have established that Defendants owe them a non-discretionary duty to process their applications in a reasonable time. The Court will here address in more detail Defendants' argument that a delay of a year or more is not unreasonable as a matter of law.

"The passage of time alone is rarely enough to justify a court's intervention in the administrative process, especially since administrative efficiency is not a subject particularly suited to judicial evaluation." *Singh,* 784 F.Supp. at 764-65 (quoting *Fraga*, 607 F.Supp. at 521). In the frequently cited case of *TRAC*, *supra*, 750 F.2d 70, the D.C. Circuit listed the following six factors for assessing the reasonableness of agency delay:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into

account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id.* at 80; *Forest Guardians*, __ F.3d __, 1998 WL 889368 *7. "The reasonableness of administrative delays must also be judged in light of the resources that Congress has supplied to the agency for the exercise of its functions." *Singh,* 784 F.Supp. at 764-65 (quoting *Fraga*, 607 F.Supp. at 521). On the other hand, "delays of [a significant] magnitude, particularly when they occur over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork." *Dabone*, 734 F.Supp. at 203; *Galvez v. Howerton*, 503 F.Supp. 35, 39 (C.D. Cal. 1980) (lack of sufficient personnel to process INS application not an acceptable excuse for delays); *See also Forest Guardians,* __ F.3d __, 1998 WL 889368 *12 (once court determines that there has been an unreasonable delay, the court is required to issue a mandatory injunction and cannot consider the agency's lack of resources in fashioning a remedy).

What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case. *Fraga*, 607 F.Supp. at 522 (challenge to delays in naturalization not appropriate for class certification because of distinct issues of fact). Thus, in *Sze v. INS*, 1997 WL 446236, *7, the district court held that a delay of seven months or more in processing naturalization applications was not unreasonable as a matter of law, taking into consideration the limited resources of the agency and the limited impact of the delay on the plaintiffs' interests.

On the other hand, in *Galvez v. Howerton*, 503 F.Supp. 35, the district court held that a six month delay in processing an application for LPR was unreasonable, warranting estoppel of the agency from denying the plaintiff a visa. *Id*. at 39. The court took note of the fact that INS had an

internal operations instruction which required that applicants for LPR status be interviewed within 60 days of the filing of their application. *Id*. In light of this internally imposed time-line, the court concluded that a six month delay in processing the application was unreasonable. Other district courts have found unreasonable delays of 16 and 20 months in processing LPR and other immigration applications. *Jefrey v. INS*, 710 F.Supp. 486, 488-89 (S.D.N.Y. 1989); *Dabone*, 734 F.Supp. at 202.

In the present case, as noted, the named Plaintiff Yu's application has now been pending for two and a half years. Even accepting INS' argument that the application was not complete until January of 1998, the application has now been pending for more than a year. Further, even accepting INS' assertion that it did not act unreasonably in failing to notify Yu's attorney of the problem with the application, as required to do by the Code of Federal Regulations, INS failed to make any attempt to alert Yu to the problem for nearly ten months. The Court is not inclined to find such conduct reasonable as a matter of law.

Taking the further steps of viewing the facts in the light most favorable to the Plaintiffs and setting aside the information outside of the pleadings-- as the Court is required to do on this motion-- the delay in this case is far from reasonable. The Court cannot imagine a reasonable justification for allowing Yu's application to go unresolved for more than two and a half years, until after Yu reached the age of majority meaning she may no longer be eligible for SIJ status. How can a young woman in her position make plans for her future when she does not even know if she will be permitted to remain in the country? And how can such an application require two and a half years to complete, even if it could be described as complicated? Particularly in light of INS' past practice of processing

similar applications in six months, the balance of interests in this case strongly point to the unreasonableness of a two and a half year delay in processing Yu's application.

With regard to the unnamed Plaintiffs, the only assertion before the Court is that all of their applications have been pending for more than a year. At this stage, the Court simply does not have sufficient facts to determine whether this delay is reasonable. While it may be that INS will be able to persuade the Court that a year long delay is not unreasonable, the Court is not prepared to rule that it is reasonable as a matter of law. The reasonableness of such delays depends on the facts and circumstances of each individual case which are currently not before the Court.

Accordingly, Defendants are not entitled to judgment in their favor on the pleadings.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Judgment on the Pleadings **[Doc. 18]** is hereby **DENIED**.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
    John Lawit
    Richard Hughes

Attorney for Defendants:
    Pauline Terrelonge
    Michael Hoses