CLERK'S COPY

FILED
UNITED STATES DISTRICT COURT
SANTA FE, NEW MEXICO

FEB 1 1 1999

CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

YUE YU, et al.,

          Plaintiffs,

and

CHIA LUN MAO and JU LIN TIEN,

          Intervenor Plaintiffs,

vs.

DOUGLAS BROWN, et al.,

          Defendants.

No. CIV 97-1491 MV/WWD

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiffs' and Intervenor Plaintiffs' Motion for Class Certification, filed November 30, 1998 **[Doc. 40]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**, as explained below.

### BACKGROUND

Plaintiff Yue Yu ("Yu") and Intervenor Plaintiffs Chia Lun Mao ("Mao") and Ju Lin Tien ("Tien"), on behalf of themselves and a purported class of similarly situated individuals, brings this action requesting this Court to issue an affirmative injunction and/or writ of mandamus commanding officials at the Immigration and Naturalization Service ("INS") to act on their applications for "Special Immigrant Juvenile Status" and for adjustment of status to lawful permanent resident.

The Immigration and Nationality Act ("INA") provides for "special immigrant juvenile status" ("SIJ status") for minors who have been declared dependant on a juvenile court and found eligible for long-term foster care, and for whom a judge has determined that it would not be in the minor's best interest to return to her country of origin. 8 U.S.C. § 1101(a)(27)(J). The INA further provides that a minor with SIJ status may apply for adjustment of status to that of lawful permanent resident ("LPR"). 8 U.S.C. § 1255. Prior to November 26, 1997, to qualify for the SIJ status, the applicant had to meet the above criteria and had to be under 21 and unmarried. *Id.* On November 26, 1997, after the filing of the Complaint in this action, new amendments to the INA took effect. Under these provisions, SIJ status is restricted to only those minors who were deemed eligible for foster care due to abuse, neglect or abandonment. *Id.* The Attorney General has determined that the new law will be applied to all applications for SIJ status which were pending at the time the law took effect.

Yu, a citizen of China, is unmarried and was under 21 years of age at the time the Complaint was filed. On July 17, 1996, the First Judicial District of New Mexico entered an order appointing Dwight Barrus as Yu's permanent guardian. The court concluded that Yu is dependent on the juvenile court and found Yu eligible for long-term foster care and permanent guardianship. The court further found that it was in Yu's best interest that she be a dependent of the court, under the guardianship of Barrus, and that it was not in her best interest to be returned to China. The court made no finding as to whether Yu was abused, neglected or abandoned. At the filing of the Complaint, Yu remained dependent on the juvenile court and remained under the guardianship of Barrus. Since the filing of the Complaint, Yu has turned 21 years old.

2

Yu filed an application for SIJ status and for adjustment to lawful permanent resident ("LPR") status on August 21, 1996. By letter dated June 9, 1997 (nearly 10 months after Yu filed her application), INS informed Yu that the set of fingerprints contained in her application did not conform to INS requirements. The letter further stated that Yu had 87 days to correct the problem. The letter was returned unopened as Yu had moved without providing a forwarding address. Yu's attorney states that he had entered a notice of appearance with INS when he filed Yu's application. Despite being required to do so by the Code of Federal Regulations, INS failed to notify Yu's attorney of the problem with her application until after the Complaint in this action was filed. At that time, INS also relayed to Yu's attorney that there was a problem with Yu's medical records. On or about January 30, 1998, Yu submitted proper fingerprints. The parties have failed to state whether the problem with the medical records was cured.

INS also cites deposition testimony indicating that Yu does not consider herself abused, neglected or abandoned by her parents. Based on this and the fact that Yu is now 21 years old, INS argues that Yu is not eligible for SIJ status. INS has nevertheless still failed to complete processing Yu's application which has now been pending for two and-a-half years.

Mao is a citizen of Taiwan and currently 17 years old. On December 26, 1996, a state court issued a guardianship order placing her in the care and custody of her grandparents who live in New Mexico. The court made no finding as to whether Mao was abused, neglected or abandoned. Mao filed an application for SIJ status on January 8, 1997. INS has not alerted this Court to any technical deficiencies in Mao's application though it cites deposition testimony of Mao that she is supported by her parents and has never considered herself abused or neglected. INS argues that Mao will not

be eligible for SIJ status but has nevertheless failed to complete processing Mao's application which has now been pending for more than two years.

Tien is a citizen of Taiwan and is currently 17 years old. A state court entered a guardianship order on January 3, 1997, placing him in the care and custody of U.S. citizens. The court made no finding as to whether Tien was abused, neglected or abandoned. Tien filed an application for SIJ status the same day. Again, INS has alerted the Court to no technical deficiencies in Tien's application but argues that based on his deposition testimony that he does not consider himself abused, neglected or abandoned, he will not qualify for SIJ status. INS has again nevertheless failed to complete processing Tien's application which has now been pending for over two years.

Each member of the proposed class has had an SIJ application pending with INS for more than one year. Defendants state that, including both applications filed before and after the filing of the Complaint, the proposed class encompasses 18 people. On information and belief, the Complaint alleges that INS previously completed processing SIJ applications in six months. In its Motion for Class Certification, Plaintiffs also cite internal INS policy statements requiring processing of similar applications within ninety days. Based on the forgoing, the Plaintiffs assert that INS has unreasonably delayed in processing the SIJ applications. The Complaint requests that the Court:

> (a) compel Defendants and those acting under them to perform their duty to act on the Special Immigrant Juvenile Status Applications filed by Yu and the members of the Plaintiff class; [and]
>
> (b) compel Defendants and those acting under them to allocate sufficient personnel to the Albuquerque Suboffice to process and act on the Special Immigrant Juvenile Status Applications filed by Yu and the members of the Plaintiff class . . . ."

Complaint, Prayor for Relief, p. 9.

Defendants previously moved this Court to dismiss the Complaint based on failure to state a claim and lack of subject matter jurisdiction, or in the alternative for judgment in its favor on the pleadings. The Court denied Defendants' Motion, finding that the Plaintiffs had established jurisdiction and successfully stated a claim, and that Defendants were not entitled to judgment as a matter of law. Plaintiffs now move for certification of the purported class and Defendants resist.

## STANDARD FOR CLASS CERTIFICATION

In order to warrant class certification, Plaintiffs must establish all of the following factors:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, Plaintiffs must also establish at least one of the following:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

5

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b).

## ANALYSIS

Defendants argue that Plaintiffs have failed to establish all elements required for class certification. Although the Court has reservations as to whether 18 plaintiffs is sufficient to warrant class certification, the Court will address here that argument which it finds most compelling and therefore dispositive: that there is an insufficient commonality of issues of fact to make class certification appropriate in this case.

Plaintiffs argue that the only relevant fact in this case is the same for all Plaintiffs, that being that each has had an application for SIJ status pending with INS for more than a year. Given that INS used to process these applications in six months and that internal INS policies require processing of similar applications in ninety days, Plaintiffs argue that a delay of a year or more is unreasonable on its face, without need to consider any of the individual facts regarding what caused the delay in processing each application. Indeed, Plaintiffs assert that the delay is cause by "neglect, mismanagement and understaffing," at INS, and ask this Court to compel INS to provide more staff and resources for processing these applications. Plaintiffs have not plead nor provided any evidence

that *all* applications for SIJ status now take more than a year to process. Rather, Plaintiffs assert that certain applications have been pending for more than a year and that this delay is unreasonable.

Defendants respond that the reasons for the delays are as varied as the Plaintiffs. Specifically, Defendants point out that some of the Plaintiffs filed their applications before the new INS amendments took effect and some filed them after. The adoption of the new law required the issuance of new regulations, accounting for some delay in some cases. Further, part of the delay in the older cases may also be attributed to the fact that it was unclear if these applications would be processed under the old law or the new amendments. Defendants also state that procedures for obtaining fingerprints changed during the pendency of some of these applications, requiring some Plaintiffs to obtain new fingerprints, accounting for additional delays. The actions of the individual applicants may also be a factor, as when an applicant moves without providing a forwarding address or fails to correct problems in an application promptly. Finally, Defendants state that the amount of investigation required on each application varies. Particularly since the new amendments require that an applicant be abused, neglected or abandoned in order to qualify for SIJ status, the amount of investigation needed to verify these facts will vary considerably.

The Administrative Procedures Act empowers this Court only to compel agency action unreasonably delayed. Because Congress has chosen not to impose statutory deadlines on INS processing of applications, the Court must assess whether a delay is reasonable under the facts of the case. *Forest Guardians v. Babbitt*, __ F.3d __, 1998 WL 889368 *10 (10th Cir. 1998). "The passage of time alone is rarely enough to justify a court's intervention in the administrative process, especially since administrative efficiency is not a subject particularly suited to judicial evaluation." *Singh v. Ilchert* 784 F.Supp. 759, 764-65 (N.D.Cal. 1992) (quoting *Fraga v. Smith*, 607 F.Supp. 517,

521 (D. Or. 1985)). It is true that "delays of [a significant] magnitude, particularly when they occur over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork." *Dabone v. Thornburgh*, 734 F.Supp. 195, 203 (E.D.Pa.1990); *Galvez v. Howerton*, 503 F.Supp. 35, 39 (C.D. Cal. 1980) (lack of sufficient personnel to process INS application not an acceptable excuse for delays); *See also Forest Guardians*, __ F.3d __, 1998 WL 889368 *12. At the same time, "[t]he reasonableness of administrative delays must also be judged in light of the resources that Congress has supplied to the agency for the exercise of its functions." *Singh*, 784 F.Supp. at 764-65 (quoting *Fraga*, 607 F.Supp. at 521).

Courts have certified class actions in cases challenging administrative delays as unreasonable only when the plaintiffs assert that the agency has violated a statutorily imposed deadline, or when the plaintiffs have identified one specific cause of the delay. In *White v. Mathews*, 559 F.2d 852, 858 (2nd Cir. 1977), for example, the court certified a class of individuals who had been denied disability benefits, had requested an evidentiary hearing to appeal that denial, and who had waited close to a year for such a hearing to be scheduled. The court held that a delay of this magnitude in merely obtaining a hearing was unreasonable and imposed specific deadlines on the agency for scheduling such hearings. *Id.* The court of appeals affirmed, noting the dire need of the plaintiffs for the disability benefits in question and the fact that more than half of the denials of benefits were overturned after the evidentiary hearing. *Id.* Because plaintiffs asserted that the cause of the delay was the same in each case– the failure to schedule an evidentiary hearing for nearly a year– the case could properly be resolved as a class action.

On the other hand, in *Mathis v. Bess*, 692 F.Supp. 248, 254-57 (S.D. N.Y. 1988) (*Mathis I*), the district court denied class certification to a purported class of plaintiffs seeking to challenge

8

delays in processing their appeals from criminal convictions. The plaintiffs sought certification of a class of all individuals "whose appeals have either not been perfected within one year of the filing of the notice of appeal or not been decided within two years from such filing." *Id.* at 254. The purported class included individuals for whom the delay was a result of delays in producing transcripts of their trials, delays by attorneys in producing appellate briefs, and delays caused by or contributed to by the plaintiffs' own actions in requesting revisions of briefs or to file supplementary briefs. *Id.* at 256-57. The district court held that such a class presented insufficient common questions of fact because the reasons for the delay had not been defined and were too varied. *Id.* at 256-57. The court noted that plaintiffs statement that the class all shared the common fact of having waited more than a year for the processing of their appeals was insufficient to demonstrate common questions of fact within the class as this merely restated the class definition. *Id.* at 256. Plaintiffs simply failed to "address the question of common facts or law beyond the characteristics of the class." *Id.*

However, three years later, the district court did certify a class action in a case brought by the same named plaintiffs where the class was limited to individuals who had experienced a delay of a year or more in *the briefing* of their appeals, and who had not themselves contributed to the delay. *Mathis v. Bess*, 138 F.R.D. 390, 393 (S.D. N.Y. 1991)(*Mathis II*). In contrast to *Mathis I*, *Mathis II* specifically defined the cause of the delay for each of the plaintiffs, rather than merely attacking a general delay caused by a lack of sufficient resources. *Id.*

Likewise, all of the cases cited by Plaintiffs in which courts have certified class action challenges to administrative delays have either specifically defined one cause of the delay or have asserted that the agency failed to meet statutorily imposed deadlines. *See Upper Valley Ass'n for*

9

*Handicapped Citizens v. Mills*, 168 F.R.D. 167 (D. Vt. 1996) (failure to develop and implement procedures for assessment of handicapped students caused delay in receiving appropriate education); *Curtis v. Commissioner, Maine Dep't of Human Services*, 159 F.R.D. 339, 341 (D.Me. 1994) (delay in receiving food stamps caused by uniform exclusion policy of agency); *Sorenson v. Concannon*, 893 F.Supp. 1469, 1479 (D.Or. 1994) (delays in receiving benefits caused by specific review procedures of agency); *Cockrum v. Califano*, 475 F.Supp. 1222, 1235 (D.D.C. 1979) (delays in simply receiving final agency decision after appeal hearing not caused by actions of plaintiffs); *Ray M. v. Board of Education*, 884 F.Supp. 696, 701 (E.D.N.Y. 1995) (failure to meet statutory deadline); *Mass. Ass'n of Older Americans v. Spirito*, 92 F.R.D. 129, 133 (D. Mass. 1981) (failure to meet statutory deadline); *Custom v. Trainor*, 74 F.R.D. 409, 412-13 (D. Ill. 1977) (failure to meet statutory deadline).

By contrast, in *Fraga v. Smith*, 607 F.Supp. 517, 522 (D. Or. 1985), the District Court of Oregon held that class certification was not appropriate in a case challenging INS delays in processing citizenship applications. The court specifically noted factual differences in the cases such as whether the applicant had to obtain new fingerprints and whether the applicant contributed to the delay by moving without providing a forwarding address or by otherwise failing to provide a complete application. *Id.* Because of the diversity of factors involved in the delay in each case, the District Court of Oregon concluded that the reasonableness of the delay could not be judged across the board, through a class action. *Id*; *see also Doe I v. Meese*, 690 F.Supp. 1572, 1574 (S.D. Tex. 1988) (class certification not appropriate in challenge to denial of asylum where reasons for denial varied, even though same procedures used, and where proposed class consisted of less than sixty individuals).

10

In *White* and the other cases in which courts have certified class action challenges to administrative delays, the plaintiffs identified specific procedures, or lack of procedures, and specific causes of the delays that were common to all cases. Here, as in *Fraga*, Plaintiffs challenge the entire duration required to process the applications to completion as unreasonable on its face, regardless of the reasons for the delay. This is too broad of an assertion for the Court to meaningfully assess. Absent an allegation that a specific procedure or policy has caused the delay in every case or an allegation that INS has failed to meet statutorily imposed deadlines, the reasonableness of the delay must be judged based on the facts of each individual case. *Fraga*, 607 F.Supp. at 522.

Because the reasonableness of the delay in processing Plaintiffs' SIJ applications depends on an array of facts distinctive to each case, class certification is not appropriate. *Id.*

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' and Intervenor Plaintiffs' Motion for Class Certification **[Doc. 40]**. is hereby **DENIED**.

MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
John Lawit
Richard Hughes

Attorney for Defendants:
Pauline Terrelonge
Michael Hoses

11