# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

YUE YU (a/k/a/ YU YUE), et. al.

      Plaintiffs,

vs.                                **No. CIV 97-1491 MV/WWD**

DOUGLAS BROWN, et. al.

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiffs' Yue Yu, et. al.'s Motion for Summary Judgment filed September 15, 1999 **[Doc. No. 56]** and Defendants' Douglas Brown, et. al.'s Cross-Motion for Summary Judgment filed September 15, 1999 **[Doc. No. 58]**.

Plaintiffs ask the Court to find as a matter of law that the November 26, 1997 amendment (the "Amendment") to § 101(a)(27)(J) of the Immigration and Nationality Act ("INA") does not apply to applications for adjustment of immigration status filed under that section prior the enactment of the Amendment. Defendants conversely ask the Court to find as a matter of law that the Amendment does apply to applications filed prior to its enactment.

The Court, having considered the parties' pleadings, the applicable law, and being otherwise fully informed, finds that Plaintiffs' Motion for Summary Judgment is well taken and will be **GRANTED**, and that Defendants' Cross-Motion for Summary Judgment is not well taken and will be **DENIED**.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.      Factual Background

The Court finds the following facts to be undisputed:  Each Plaintiff is unmarried, under

21 years old and a non-permanent resident of the United States.  Each Plaintiff has been declared

dependant upon a juvenile court located in the United States in accordance with state law

governing such declarations of dependancy while in the United States and under the jurisdiction of

the court that made the declaration.  Each Plaintiff has been deemed eligible by the juvenile court

for long-term foster care and continues to be eligible for such.  The juvenile court has declared for

each Plaintiff that it would not be in the Plaintiff's best interest to be returned to the country of

nationality or the last habitual residence of the Plaintiff or the Plaintiff's parents.  Prior to

November 26, 1997, each Plaintiff filed with the INS's Albuquerque suboffice an INS Form I-360

(Petition for Amerasian, Widow or Special Immigrant) (hereinafter "SIJ petition"), with

accompanying documentation, seeking classification as a "special immigrant juvenile" pursuant to

8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. § 204.11.  At the same time, each Plaintiff filed with the

Albuquerque suboffice an INS Form I-485 (Application to Register Permanent Residence or

Adjust Status), with accompanying documentation, seeking an adjustment of his or her

immigration status to that of a lawful permanent resident, pursuant to 8 U.S.C. § 1244 and 8

C.F.R. § 245.2.  As of this date, none of the Plaintiffs' SIJ petitions or adjustment applications

have been adjudicated.

## II.     Procedural Background

On November 20, 1997, Plaintiff Yue Yu filed a Complaint For Declaratory and Injunctive

Relief.  In the Complaint, Yu sought mandamus relief on her own behalf and on behalf of a class

2

of persons similarly situated - namely, all persons who have filed an SIJ petition and adjustment application with the INS's Albuquerque Suboffice, whose petition and/or application has been pending for more than one year without adjudication. Yu asked the Court to certify a Plaintiff class, compel Defendants to adjudicate the applications, and compel Defendants to allocate sufficient resources to facilitate the adjudication of the applications. On July 20, 1998, Plaintiffs Chia Lun Mao and Ju Lin Tien were granted intervention. The Court denied class certification on February 11, 1999. On June 4, 1999, the parties filed a Stipulated Partial Settlement Agreement. Yu's claim was essentially resolved. Mao's and Tien's claims were amended by section I(B)(2) of the Agreement, which states in relevant part:

> The parties agree and hereby stipulate that the final resolution of this case depends on the Court's determination of the single legal issue, whether the November 26, 1997 amendment to INA § 101 (a)(27)(J) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)(27)(J)) ("the Amendment") applies to applications for adjustment of status filed under that section prior to the enactment of the Amendment.

The Defendants agree that if the final, non-appealable decision on the issue of applicability of the Amendment is in favor of Plaintiffs and any Plaintiff-Interveners, the INS will adjudicate within 60 days of such decision the applications of Plaintiffs and any Plaintiff-Interveners under the prior law, provided that the applications are still ripe for adjudication, and the applicants are still *prima facie* eligible for the subject immigration benefit and have not attained his or her twenty-first birthday.

## LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed.R.Civ.P. 1). Under Rule 56(c),

summary judgment is appropriate when the Court, viewing the record in the light most favorable

to the non-moving party, determines that "there is no genuine dispute over a material fact and the

moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d

995, 996 (10th Cir. 1993). The movant bears the initial burden of showing "there is an absence of

evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939

F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate specific facts showing that there is a

genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the

motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United*

*States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by

demonstrating to the district court that there is an absence of evidence to support the nonmoving

party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to

judgment as a matter of law, "because the nonmoving party has failed to make a sufficient

showing on an essential element of her case with respect to which she has the burden of proof."

*Id.* at 322.

## DISCUSSION

The sole issue presented before the Court on the motions for summary judgment is

whether the November 26, 1997 Amendment to § 101 (a)(27)(J) of the Immigration and

Nationality Act, 8 U.S.C. § 1101(a)(27)(J), applies to applications for adjustment of immigration

status filed under that section prior to the enactment of the Amendment.  Simply put, the Court

must determine whether the Amendment applies to Plaintiffs' applications pending as of the date

of enactment.  Plaintiffs argue that (1) the Court should not give deference to an INS

determination that the Amendment applies to pending applications; (2) Congress did not intend to

apply the Amendment to pending applications; (3) an impermissible retroactive effect would result

if the Amendment was applied to applications filed prior to the date of enactment; and (4) the

applications should be processed under the SIJ provisions that existed prior to the Amendment.

Defendants dispute Plaintiffs' contentions and argue that the Court should reach the opposite

conclusions.

I.      **Applicable SIJ Provisions and Amendment**

        In order to resolve these issues, it is necessary to review the relevant INA provisions and

the Amendment.

        Section 153 of the Immigration Act of 1990, P.L. 101-649, Title I, 104 Stat. 5005-06,

added subparagraph (J) to section 101(a)(27) of the INA creating a classification known as

"Special Immigrant Juvenile" ("SIJ").  Prior to November 26, 1997, a Special Immigrant Juvenile

was defined as:

> an immigrant (i) who has been declared dependant on a juvenile court located in the
> United States or whom such a court has legally committed to, or placed under the custody
> of, an agency or department of a State and who has been deemed eligible by that court for
> long-term foster case, and (ii) for whom it has been determined in administrative or
> judicial proceedings that it would not be in the alien's best interest to be returned to the
> alien's or parent's previous country of nationality or country of last habitual residence.

On November 26, 1997, President Clinton signed the fiscal year 1998 appropriations bill for the Department of Commerce, Justice and State (Pub. L. No. 105-119, 111 Stat. 2440). Tucked into this omnibus legislation, section 113 of the bill amended INA §101(a)(27)(J) so that Special Immigrant Juvenile would be defined as follows:

(J) an immigrant **who is present in the United States**

    (i)    who has been declared dependant on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care **due to abuse, neglect, or abandonment**;

    (ii)    for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

    (iii)    **in whose case the Attorney General expressly consents to the dependancy order serving as a precondition to the grant of special immigrant juvenile status**; except that

        (I)    **no juvenile court has jurisdiction to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney General unless the Attorney General specifically consents to such jurisdiction; and**

        (II)    no natural parent or prior adoptive patent of any alien provided

> special immigrant status under this subparagraph shall thereafter, by
>
> virtue of such parentage, be accorded the right, privilege or status
>
> under this Act;

111 Stat. 246 (bolding added to show changes).

Thus, the SIJ Amendment added the requirements that (1) the declaration of dependency be based on a finding of abandonment, abuse or neglect; (2) the Attorney General expressly consent to the dependency order; and (3) the Attorney General expressly consent to juvenile court jurisdiction over certain applicants. Prior to the enactment of Public Law 105-119 in 1997, there had been no INS policy or practice requiring that a dependency order be based on a finding or abandonment, abuse or neglect or requiring the Attorney General to expressly consent to the dependency order or juvenile court jurisdiction. *See* 8 C.F.R. § 204.11.

## II.     *Chevron* Deference

On August 7, 1998, the INS issued an Interim Field Guidance stating that the amended SIJ provision would be applied to all applications for SIJ petitions and applications for adjustment of status pending at the time of enactment. As a threshold matter, the Court must address the Government's contention that the Interim Field Guidance deserves deference under *Chevron U.S.A. v. Natural Resources Defense Counsel*, 467 U.S. 837 (1984). Judicial review of an agency's construction of a statute entrusted to its administration entails a two-step inquiry. *Id*. at 842-43. First, the Court must determine whether Congressional intent on the issue is clear and unambiguous. "If, by 'employing traditional tools of statutory construction' ... we determine that Congress' intent is clear 'that is the end of the matter.'" *Id*. at 843 (citations omitted). Thus, if the Court finds unambiguous congressional intent, the Court must give effect to such

Congressional intent and no deference to an agency's interpretation is required. Absent a direct expression of Congressional intent, the Court must defer to an agency's reasonable interpretation of a governing statute. *Id.* at 843-44. Deference is appropriate where "Congress delegated rule making power to an agency and thereby sought to rely on agency expertise in the formation of substantive policy." *Jurardo-Gutierrez v. Greene*, 190 F.3d 1135, 1147 (10th Cir. 1999) (*quoting Sandoval v. Reno*, 166 F.3d 225, 239 (3rd Cir. 1999)).

Here it is not clear that *Chevron* deference is appropriate. As an initial matter, as this Court will explain more fully in section III, *infra*, in this case the Congressional intent is clear and unambiguous that the Amendment should only be applied prospectively. Accordingly, applying the two-step *Chevron* analysis, there is no need to defer to the INS's interpretation where the statute is clear and unambiguous. *See Chevron v. Natural Resources Defense Counsel*, 467 U.S. at 843; *see also Mayers v. INS*, 175 F.3d 1289, 1303 n. 20 (11th Cir. 1999) (*Chevron* deference not required where court determines clear Congressional intent); *Sandoval v. Reno*, 166 F.3d at 240 (agency deference not required under *Chevron* where Congressional intent is clear that statute should only be applied prospectively); *Henderson v. INS*, 157 F.3d, 106, 130 (2nd Cir. 1998) (no deference given to INS interpretation where meaning of statute is clear); *Goncalves v. Reno*, 144 F.3d 110, 127 (1st Cir. 1998).

Furthermore, even if the Congressional intent was ambiguous as to the retroactive application of the Amendment, it would not be appropriate to defer to the INS's construction of the statute's temporal reach. The Tenth Circuit has held that deference to an INS interpretation is not appropriate under these circumstances because "[d]etermining a statute's temporal reach does not require any special agency expertise." *Jurardo-Gutierrez*, 190 F.3d at 1147 (*citing Sandoval*

*v. Reno*, 166 F.3d at 239; *Goncalves v. Reno*, 144 F.3d at 127.)  The Government urges the

Court to defer to the INS's construction of the statute's temporal reach, arguing that the Tenth

Circuit's holding in *Jurardo-Gutierrez* has been fatally undercut by a recent Supreme Court

decision in *INS v. Aguire-Aguire,* 526 U.S. 415 (1999).  In *Aguire-Aguire* the Supreme Court

held that the Ninth Circuit Court of Appeals should have deferred to the Board of Immigration

Appeal's ("BIA") construction of the term "non-serious political crimes" as set forth in INA §

1253(h)(1).  In so holding, the Supreme Court found that the *Chevron* principles of deference

should be afforded to the BIA's interpretation of ambiguous statutory terms because 8 U.S.C. §

1103(a)(1) authorizes the INS to interpret all questions of immigration law.  *Aguire-Aguire* does

not undermine this Court's present holding, or the Tenth Circuit's holding in *Jurardo-Gutierrez*

that agency deference is not appropriate in determining the temporal reach of a statute.  *Aguire-*

*Aguire* did not deal with the specific question of whether an agency position regarding retroactive

application of a statute is entitled to *Chevron* deference.  Rather, *Aguire-Aguir*e dealt with the

INS's interpretation of the specific INA statutory term "serious political crime" (8 U.S.C. §

1253(h)(2)(C)) in deciding whether an applicant was eligible for asylum, which is the type of

technical application of a statutory scheme requiring the expertise of the INS to which *Chevron*

deference applies.  In contrast, the issue in the present case is not an issue of immigration law *per*

*se*, but rather the temporal reach of a statute - an issue in which the INS does not have particular

expertise.  Retroactivity, and the temporal scope of statutes are considered to be "pure questions

of statutory construction for the court to decide."  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446

(1987); *see also Jurardo-Gutierrez*, 190 F.3d at 1147; *Sandoval v. Reno,* 166 F.3d at 239-40;

*Mayers v. INS,* 175 F.3d at 1302; *Goncalves v. Reno*, 144 F.3d at 127.  Furthermore, the Tenth

Circuit holding in *Jurardo-Gutierrez*, that INS deference was not appropriate in determining the retroactive scope of a statute, was issued after the Supreme Court set forth its ruling in *Aguire-Aguire*. If the holding in *Aguire-Aguire* truly was, as argued by the Government, that courts should defer to the INS's determination of a statute's temporal reach, then the Tenth Circuit would surely have followed such a mandate in *Jurardo-Gutierrez*.[1] Likewise, another federal court held in *Pottinger v. Reno*, after the Supreme Court's ruling in *Aguire-Aguir*e, that *Chevron* deference was not appropriate for determining the temporal scope of an immigration statute. *Pottinger v. Reno*, 51 F. Supp. 2d 349 (E.D.N.Y. 1999).

Notwithstanding this case authority, the Government argues that *Chevron* deference is appropriate with regard to an agency's interpretation of a statute's retroactivity, citing to the recent Fifth Circuit decision in *Zadvydas v. Underdown*. 185 F.3d 279 (5th Cir. 1999). In *Zadvydas* the Fifth Circuit Court of Appeals deferred to the INS's construction of the temporal reach of the statute stating that "while the statute currently is not a model of clarity in respect to its retroactive application ... we find the INS's construction reasonable." *Id*. at 286-87. *Zadvydas* is quite distinguishable from the present case in that the parties in *Zadvydas* stipulated that the INA statute in question should be applied retroactively. Here, in contrast, the very issue before the Court is the Amendment's retroactivity. This Court does not have the benefit of a stipulation regarding the Amendment's temporal scope. It is one thing for the Fifth Circuit to defer to the

---

[1] The Government also argues to no avail that the Tenth Circuit *Jurardo-Gutierrez* opinion did not consider the Supreme Court's holding in *Aguire-Aguire* because the briefing process before the Tenth Circuit was already completed prior to when the Supreme Court's decision was issued in *Aguire-Aguire*. The Court is confident that the Tenth Circuit was aware of the *Aguire-Aguire* decision, notwithstanding the completion of the briefing process, and would have considered the ramifications of *Aguire-Aguire* in issuing its opinion in *Jurardo-Gutierrez*.

INS's interpretation of a statute where there is no genuine dispute between the parties as to its retroactivity. It is quite another for this Court to defer to the INS's interpretation where the temporal reach of the statute is hotly and reasonably debated, and where the Tenth Circuit has held in *Jurardo-Gutierrez* that *Chevron* agency deference is not appropriate in the context of a statute's retroactivity.

Moreover, the Interim Field Guidance upon which the Government relies incorporates no legal reasoning or statutory construction of the kind which a court applying *Chevron* deference expects. Rather, the Interim Field Guidance states in a cursory manner that the SIJ amendment "became effective immediately and is applicable to all special immigrant juvenile petitions pending adjudication or adjustment to special immigrant juvenile status." It is impossible for this Court to determine whether the INS's construction of Amendment's temporal reach is reasonable without any indication of the reasoning, analysis or rationale underlying the INS's conclusion. Other courts that have had the benefit of reviewing the INS's legal reasoning and analysis underlying its interpretation of a statute, have rejected such interpretations where it found the legal reasoning flawed. *See, e.g., Mojica v. Reno,* 970 F. Supp 130, 181-82 (E.D.N.Y. 1997) (rejecting Attorney General's opinion based not on statutory construction, but rather on the Attorney General's interpretation of judicial default rules expressed by Supreme Court); *Vargas v. INS*, 938 F.2d 358, 363 (2d Cir. 1991) (administrative agency decision not presented as statutory interpretation cannot command *Chevron* deference). In the absence of any legal reasoning, retroactivity analysis or reference to any overriding policy concerns, deference to the Interim Field Guidance is not warranted.

Finally, the Interim Field Guidance is not the type of agency decision which warrants

*Chevron* deference. The Tenth Circuit has made clear that an agency's statutory construction is entitled to *Chevron* deference only when it is reached through the proper rulemaking procedures pursuant to the Administrative Procedure Act, such as either an administrative rulemaking or an adjudicative decision. *See Mission Group Kansas v. Riley* 146 F.3d 775, 781 n. 4, 5 (10th Cir. 1998); *Headrick v. Rockwell Intern*, 24 F.3d 1272, 1282 (10th Cir. 1994). Here, the only INS interpretation offered by the Government is an Interim Field Guidance, not arrived at through the proper rulemaking or adjudicative channels, which blankly states that the Amendment will apply to all pending SIJ petitions without any statutory construction or legal analysis explaining this conclusion.[2] Under these circumstances, the Court is not bound to follow this INS interpretation and would even be remiss if it deferred to such an unsupported and unexplained statutory construction.

An additional point worth noting is that the Interim Field Guidance issued by the INS contradicts the earlier INS position represented to this Court that the Amendment would not be applied to pending cases. *See Defendant's Motion For Judgment on the Pleadings and Supporting Memorandum of Law* at 8, n. 4. An agency's interpretation of a statutory provision

_____

[2]        The Government argues that the reason why no adjudicative decision has been rendered in this case is because of a settlement agreement which bypasses the administrative procedure. This argument is unpersuasive. First, even though the settlement process in this case has resulted in a circumvention of the administrative remedies, there are undoubtably other cases pending around the nation which could have resulted in an administrative adjudication. *See, e.g., Gao v. Jenifer* 185 F.3d 548 (6th Cir. 1999) (deciding the retroactivity of the SIJ Amendment). The Court will not issue a blanket exception to the Tenth Circuit's disfavor of deferring to administrative decisions not reached through the proper rule making procedures, merely because a settlement has been reached in this case. In addition, there are other rulemaking procedures available to the INS, such as issuing a regulation in the federal registry. The INS has not yet done so, and this Court is not bound to follow a conclusory agency interpretation issued outside of the formal rulemaking procedures.

that conflicts with the agency's earlier interpretation is entitled to less deference than a consistently held agency interpretation. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 447, n. 30 (1987). Here of course, neither INS interpretation follows formal rulemaking procedures and accordingly, neither is entitled to deference under Tenth Circuit law. *See Mission Group Kansas, Inc. v. Riley,* 146 F.3d at 781, n. 4, 5; *Headrick v. Rockwell Intern,* 24 F.3d at 1282.

## III.    Retroactivity Analysis

Having concluded that INS deference is not appropriate in this case, the Court must now determine the temporal scope of the Amendment. There is a well-established presumption that in the absence of explicit language, new statutes may be applied only prospectively. *See Lindh v. Murphy*, 521 U.S. 320, 324 (1997); *Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994); *see also Hughes Aircraft Co. v. United States, ex rel. Schumer,* 520 U.S. 939, 946 (1997). This presumption against retroactive legislation is deeply rooted in Anglo-American jurisprudence and is based in considerations of fairness which dictate that "individuals should have an opportunity to know what the law is and conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Products*, 511 U.S. at 265. In discussing retroactive application of statutes, the Supreme Court has expressed concern that:

> the legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressure poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups, or individuals. *Id*. at 266.

A court must evaluate the retroactivity of legislation while keeping in mind traditional concerns of fair notice, settled expectations and protection of unpopular groups or individuals.

In *Landgraf v. USI Film Products* and *Lindh v. Murphy*, the Supreme Court delineated

the approach that courts must take in determining the temporal effect of new legislation. *Landgraf v. USI Film Products*, 511 U.S. at 280, *Lindh v. Murphy*, 521 U.S. at 320. Under the *Landgraf-Lindh* approach the court must first "determine whether Congress has expressly prescribed the statute's reach." *Jurardo-Gutierrez v. Greene*, 190 F.3d at 1148 (*quoting Landgraf v. USI Film Products*, 511 U.S. at 280). Second, if Congress has not expressly addressed the temporality question, the court must employ the "normal rules of statutory construction to ascertain the statute's temporal scope." *Jurardo-Gutierrez v. Greene,* 290 F.3d at 1148; *see also Landgraf v. USI Film Products*, 511 U.S. at 244; *Lindh v. Murphy*, 521 U.S. at 326. Finally, if the court cannot ascertain congressional intent, "we consider whether the statute has a retroactive effect." *Jurardo-Gutierrez v. Greene,* 290 F.3d at 1148; *see also Landgraf v. USI Films*, 511 U.S. at 280. If a retroactive effect exists, the traditional judicial presumption against retroactivity is triggered, and the new law will not be applied. *Id.*

### A.     Congressional Intent

Applying these principles to the case at bar, the Court must first determine whether Congress clearly prescribed the temporal reach of the SIJ Amendment. *See Jurardo-Gutierrez v. Greene,* 190 F.3d at 1148 (*quoting Landgraf v. USI Film Products,* 511 U.S. at 280). Both parties agree, as does the Court, that the Amendment is silent as to its temporal scope. Such absence of clear Congressional expression triggers the *Landgraf-Lindh* presumption against retroactivity. *See Landgraf v. USI Film Products*, 511 U.S. at 264; *Lindh v. Murphy*, 521 U.S. at 324; *see also Hughes Aircraft co. v. United States, ex rel. Schumer*, 520 U.S. at 946. Against the backdrop of this presumption, the Court must now engage in statutory construction in an effort to glean any Congressional intent regarding the Amendment's retroactivity. *Landgraf v.*

*USI Film Product*s, 511 U.S. at 244; *Lindh v. Murphy*, 521 U.S. at 324; *Jurardo-Gutierrez*, 190 F.3d at 1148. A court should use the "normal tools of construction" and examine the text, structure, and history of the legislation to determine whether Congress intended for there to be retrospective application. *Lindh v. Murphy*, 521 U.S. at 326.

The legislative history of the Amendment, like the statutory language itself, is silent with respect to its temporal reach. The Conference Report on the bill that was eventually enacted as Public Law 105-119 contains a brief statement regarding the section 113 Amendment which provides in pertinent part:

> the language has been modified in order to limit the beneficiaries of this provision to those juveniles for whom it was created, namely abandoned, neglected, or abused children.

While the Conference Report makes clear the purpose of the Amendment, it does not indicate that the Amendment should be applied to SIJ petitions filed before its enactment. The only other legislative history underlying the Amendment is an exchange between a Senator from New Mexico and the Attorney General during a Hearing of the Appropriations Subcommittee on Commerce, Justice, State, and Judiciary and Related Agencies on the Fiscal Year 1998 Budget Request of the Justice Department. During this exchange the Senator stated that the SIJ status was "intended to be reserved for certain juveniles who were abused, neglected or abandoned." The Senator gave anecdotal information to the Attorney General indicating that the SIJ status as previously drafted had a broader application than for which it was originally intended and was being utilized by juveniles who were neither abused, neglected nor abandoned. The Attorney General responded that she was willing to "work with you if legislative efforts are necessary to correct the loophole." This again makes clear the purpose of the Amendment was to limit SIJ

eligibility, but fails to elucidate its temporal scope.

The Government argues that the Conference Report and the Budget Hearing make clear that the SIJ statute was always intended to be limited to abused, neglected or abandoned children, however poor Congressional drafting created an unintended loophole.  The Government asserts that the Amendment should be applied to all pending SIJ petitions, since Congress intended to close the loophole which allowed a broader application SIJ status to benefit immigrants who were not abused, neglected or abandoned.  The Government's argument fails for a number of reasons.

First, there is no evidence outside of the Conference Report and the exchange between the Senator and the Attorney General which sheds light on the original purpose of the SIJ status as enacted in 1990.  The 1990 definition of Special Immigrant Juvenile contained no requirements that the juvenile be abandoned, neglected or abused.  Nor was it INS practice to verify that such SIJ applicants were in fact abandoned, neglected or abused.  It is not clear that the law was truly intended for abandoned, neglected and abused juveniles only and was being misused contrary to its true purpose.  The legislative history cited by the Government in an effort to explain the "original" purpose of SIJ status was created seven years after Special Immigrant Juvenile status was first established as an immigration category.  There is no contemporaneous legislative history the Court is aware of which explains why SIJ status was originally created in 1990.  The Court is not persuaded that it should rely on the legislative history created seven years after the enactment of SIJ status as guidance in determining what the original purpose of SIJ as enacted in 1990.  The Supreme Court has made clear that legislative history created years after a statute was passed is not an authoritative and binding interpretation of what a statute meant when it was enacted.  *See Pierce v. Underwood*, 487 U.S. 552 (1988) (rejecting a Committee Report's interpretation of a

statute enacted years before). "It is the function of the courts and not the Legislature to say what an enacted statute means." *Id*. at 566. Neither the language of the original 1990 SIJ definition, the non-existent legislative history of the 1990 SIJ statute, nor the practice of the INS in enforcing the SIJ petitions supports the Government's contention that SIJ status was originally intended for only abused, neglected or abandoned children.

Moreover, assuming *arguendo*, that the original 1990 SIJ status was intended to benefit only abandoned, neglected or abused children, as asserted by the legislative history of the 1997 Amendment, this still does not support the Government's argument that there is clear Congressional intent that the Amendment should be applied retroactively. All that is clear from this legislative history is that Congress believes that a loophole existed in the 1990 definition of SIJ status and that the 1997 Amendment was passed to remedy this loophole. This makes the purpose of the 1997 Amendment clear, but does not shed any light on the temporal scope of the Amendment. The asserted Congressional purpose of curing a loophole may provide a rational basis against a constitutional challenge to the retroactive application of the SIJ Amendment, however it does not overcome the presumption against retroactivity in the absence of clear Congressional intent. *See, e.g., U.S. v. Carlton*, 512 U.S. 26, 32 (1994) (upholding a due process challenge to a tax statute applied retroactively which was intended to cure a loophole in prior tax law). If the purpose of the 1997 SIJ Amendment was indeed to cure a loophole, then Congress should have been even more cognizant of the retroactivity issue and should have expressed a clear intent to apply the statute retroactively to pending applications if it so desired. The absence of such a clear expression leads the Court to only one conclusion - Congress did not intend to apply the statute retroactively to pending SIJ applications.

In addition to a lack of Congressional intent manifested in the plain language of the Amendment or in its legislative history, there is also a negative inference to be drawn against applying the Amendment retroactively by looking to other INA amendments enacted in Public Law 105-119. It is evident from examining the text of other INA amendments that Congress has no trouble finding the words to purposefully enact retroactive legislation. "When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza-Fonseca*, 480 U.S. at 432. The Supreme Court in *Lindh v. Murphy* found that where Congress expressly provided for retroactive application in one provision of the AEDPA, silence in another provision created a "negative implication" that Congress intended prospective application when it had not expressly provided for retroactive application. 512 US. at 330-338. Several courts have followed suit and drawn such negative inferences from other statutory provisions in determining whether Congress intended an immigration statute to apply retroactively. The First, Second, Third and Eleventh Circuits each decided that § 440(d) of the AEDPA applies only prospectively after examining other sections of the AEDPA which expressly provided for retroactive application. *See Goncalves v. Reno*, 144 F.3d 110; *Henderson v. INS*, 157 F.3d 106; *Sandoval v. Reno*, 166 F.3d 225; *Mayers v. INS*, 175 F.3d 1289.[3]

---

[3]    The Government argues that the Tenth Circuit in *Jurardo-Gutierrez*, 190 F.3d 1135, 1147 rejected the First, Second, Third and Eleventh's Circuit's opinions in *Goncalves, Sandoval, Henderson,* and *Mayers*. The Court is quite puzzled as to how the Government arrived at this conclusion when the Tenth Circuit in *Jurardo-Gutierrez* explicitly noted that it was not deciding the issue presented in those cases, stating "we emphasize that we do not decide the question presented to our sister circuits in similar cases. The First, Second, Third, and Eleventh Circuits have found that the AEDPA § 440(d) does not apply to cases pending at the time of the

Significantly, at least one other provision of Public Law 105-119, section 112(d), amending another section of the INA pertaining to application for immigration benefits did contain an express effective date provision making those changes in the law applicable to petitions and applications filed prior to the enactment of Public Law 105-119. *See* § 112(d), 111 Stat. 2460. The fact that Congress made at least one of the other changes in eligibility for INS benefits effective retroactively to applications that were filed prior to the enactment of the changes and did not so provide with respect to the section 113 SIJ Amendment suggests that Congress did not intend for the Amendment to apply retroactively to SIJ petitions filed prior to its enactment. *See INS v. Cardoza-Fonseca*, 480 U.S. at 432. The Government argues that a negative inference should not be drawn from Congress' explicit application of statutory benefits contained in section 112 to applications pending at the time of enactment of Public Law 105-119. The Government asserts that section 112 deals with a different subject matter from the section 113 Amendment, making any comparison unwarranted. It is true that in *Martin v. Hadix*, the Supreme Court clarified that negative implications concerning a statute's retroactivity should not be drawn by comparing two wholly distinct statutory provisions. 527 U.S. 343, 119 S.Ct. 1998, 2005 (1999). In *Martin v. Hadix*, the Supreme Court evaluated the retroactive application of § 803, an attorney fees provision in the Prison Litigation Reform Act ("PLRA"). Respondents in that case sought to draw a negative implication from § 802 which discussed relief and remedies available to litigants under the PLRA. Clearly relief and remedies available to prison litigants is a wholly different

AEDPA's enactment [citations omitted]. We confront a significantly different issue. In the cases before us, petitioners argue that AEDPA § 440(d) cannot apply to anyone who has a criminal conviction that predates April 24, 1996, regardless of whether or not they had already entered deportation proceedings or applied for discretionary relief." 190 F.3d at 1147 n. 9.

subject matter than attorney fees.  In this case, the differences between sections 112 and 113 of Public Law 105-119 are less significant.  The Government defines the subject matter of the two sections too narrowly.  Section 112 permits Philippine nationals who had served with the United States armed forces to apply for naturalization.  The retroactive application of the statute was intended to prevent applicants from the necessity of refilling applications after the enactment of section 112.  Similarly, the section 113 SIJ Amendment also relates to adjust of immigration status.  To the extent that sections 112 and 113 effect changes in the Immigration and Nationality Act and pertain to eligibility for immigration and naturalization benefits, they deal with the same or similar subject matter and are appropriately compared.

Conversely, the Government argues that a more persuasive inference should be drawn from the presence of a savings clause in section 111 of Public Law 105-119, which eliminated a statutory provision that permitted an alien present in the United States with a visa to adjust his or her status without having to depart the United States.  The savings clause stated that the change would not apply to any adjustment applications filed prior to the Act's effective date.  The Government argues that section 111 indicates that Congress intended for all immigration amendments to apply to pending applications unless a savings clause was included.  The Government in making this argument is assuming that there is a presumption of retroactive application of a statute in the absence of a savings clause.  This is directly contrary to the well-established principle that the absence of a clear statement of Congressional intent gives rise to a presumption that the law does not apply retroactively.  A savings clause like the one included in section 111 simply provides a clear indication of Congressional intent; the absence of such a savings clause does not give rise to a presumption of retroactive application.  Congress is not

obligated to enact a savings clause every time it wishes to prevent a statute from applying

retroactively. To the contrary, Congress must clearly express its intent for retroactivity in order

to overcome the presumption against retroactive application of a statute. The Court assumes that

Congress is aware of this presumption of prospective application and would act accordingly. *See*

*Lindh v. Murphy*, 521 U.S. at 328 (commenting on the "wisdom of [Congress] being explicit if it

wanted [a statute]... to be applied to cases already pending.")

The Supreme Court has held that any ambiguities in immigration statutes must be read in

favor of the immigrant. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987) (discussing "the

longstanding principle of construing any lingering ambiguities in deportation statutes in favor of

the alien.") In the context of deportation statutes, the Supreme Court has stated that

> ... deportation is a drastic measure and at times the equivalent of banishment or
> exile .... [S]ince the stakes are considerable for the individual, we will not assume
> that Congress meant to trench on his freedom beyond that which is required by the
> narrowest of several possible meanings of the words used.

*Cosello v. INS*, 376 U.S. 120, 128 (1964) (citations omitted). Although the statute at issue in this

case involves an adjustment of status, rather than deportation, the end result is the same and the

inevitable consequence of applying the Amendment retroactively to Plaintiffs would result in their

deportation. Accordingly, although the Court does not have any lingering doubts about the

temporal scope of the Amendment, such ambiguities if they existed would necessarily need to be

resolved in favor of the immigrant Plaintiffs. Congress knew that explicit language is required for

a statute to be applied retroactively. It included such explicit language to varying degrees in other

portions of Public Law 105-119 relating to immigration. The Court can only presume that

Congress' failure to include such explicit language in the SIJ Amendment was a result of

Congressional intent that the statute should be applied only prospectively, as statutes are typically applied. Where the issue is retroactivity the fundamental principle is that Congress should not be viewed as having acted against long established principles of fundamental fairness and reasonable notice unless it has clearly expressed an intent to do so. It is Congress' obligation to consider the countervailing interests involved in applying a statute retroactively. Here there is nothing either in the plain language of the statute or in the legislative history indicating that Congress considered the issue of the SIJ Amendment's temporal scope. Whether this is a result of inadvertence, or as the Court believes, because Congress intended the statute to apply prospectively only, it is not for the Court or for the INS to usurp Congress' role by interjecting a statutory provision which has not been clearly articulated.

After carefully examining the text of the SIJ Amendment, the legislative history, the structure of the statute, and the presumption against retroactivity, the Court finds it quite clear that Congress intended only to apply the SIJ Amendment prospectively rather than to pending applications. Having discerned this clear Congressional intent, the temporal scope inquiry commanded by Supreme Court in the *Landgraf-Lindh* cases is complete. *See Landgraf v. USI Film Products*, 511 U.S. at 280; *Lindh v. Murphy*, 521 U.S. at 324. The Court's analysis has support from the Sixth Circuit, which in *Gao v. Jenifer* decided this very issue and found that section 113 did not apply retroactively to SIJ applications pending at the time of its enactment because "Congress did not explicitly state its intent regarding the retroactive application of the 1997 amendment." 185 F.3d at 553.

**B.      Retroactive Effect**

The Government finally argues that the SIJ Amendment can be applied to pending SIJ

petitions without resulting in a retroactive effect.  If a court cannot ascertain Congressional intent regarding the temporal reach of a statute, the court must consider whether the statute has a retroactive effect.  *See Landgraf v. USI Film Products*, 511 U.S. at 280; *Lindh v. Murphy*, 521 U.S. at 324;  *Jurardo-Gutierrez*, 190 F.3d at 1148.  If a retroactive effect exists, "it triggers the traditional judicial presumption against retroactivity and the new law will not be applied." *Craig v. Eberly*, 164 F.3d 490, 494 (10th Cir. 1998) (*citing Landgraf v. USI Film Products*, 511 U.S. at 280).

A provision has a retroactive effect if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or imposes new duties with respect to transactions already completed."  *Landgraf v. USI Film Products,* 511 U.S. at 280; *see also Hughes Aircraft v. United States*, *ex. rel. Schumer*, 520 U.S. at 947.  If the statute affects the substantive rights of an individual, it is deemed to have a retroactive effect and should only be applied prospectively. *See Landgraf v. USI Film Products,* 511 U.S. at 270-271; *Reyes-Hernandez v. INS*, 89 F.3d 490, 492 (7th Cir. 1996); *Mendez-Rosas v. INS*, 87 F.3d 672, 674 (5th Cir. 1996).  In contrast, statutes effecting jurisdictional and procedural rights are not considered to have a retroactive effect.  *See Landgraf v. USI Film Products,* 511 U.S. at 275.  A statute does not "operate 'retrospectively' merely because it is applied in a case arising from conduct anteceding the statute's enactment or upsets expectations ... Rather the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269-70; *Jurado-Gutierrez v. Greene*, 190 F.3d at 1148.  The Supreme Court has recognized that there is no bright-line rule in determining retroactivity, stating

any test of retroactivity will leave room for disagreement in hard case, and is

unlikely to classify the enormous variety of legal changes in perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have 'sound instinct'...and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance. *Landgraf v. USI Film Products,* 511 U.S. at 270.

Although the Court finds that Congressional intent is clear that the SIJ Amendment applies only prospectively, the Government urges the Court to engage in the retroactive effect analysis. The Government first argues that the Court should determine that the *granting of* SIJ benefits, rather than the *application for* SIJ benefits is the appropriate reference point from which to conduct a retroactive effect analysis. The Government then asserts that applying the SIJ Amendment to pending applications will not result is a retroactive effect. In an effort to clarify the issue, the Court will address the Government's arguments.

The Government argues that the under Justice Scalia's concurrence in *Martin v. Hadix*, the key question in any retroactivity analysis is "retroactive in reference to what." *Martin v. Hadix*, 119 S.Ct. at 2007. The Government asserts that there is no logical reason that the application of SIJ benefits should be the pivotal event by which retroactivity is measured. Rather, the Government argues that the retroactivity event should be whether the applications were actually processed by the INS and whether the Plaintiffs were actually granted SIJ status. According to the Government, the statute would only be acting retroactively if it took away SIJ benefits already granted to Plaintiffs after their applications were processed. By way of authority, the Government points out that the Supreme Court determined in *Martin v. Hadix* that there was no retroactive effect where an attorney fees limitation for prison litigation was applied to cases pending at the time the PLRA was enacted. 119 S. Ct. 1998.

The Government's arguments are misplaced for several reasons. First, *Martin v. Hadix* is

quite distinguishable from the case at bar. In *Martin v. Hadix*, there was ongoing litigation to which the PLRA applied. The respondents in that case sought attorney fees under a former, more generous, statute for all cases initiated prior to the enactment of the PLRA. Due to the ongoing nature of the litigation, the Supreme Court rejected respondents' argument that all pending cases should be exempt from the PLRA. Rather the Supreme Court found that the PLRA applied to pending cases, but only to that portion of legal work completed after the PLRA act was enacted. 119 S.Ct at 2007. Here, in contrast, Plaintiffs completed their entire transactions, including the favorable juvenile court determinations and the applications for SIJ benefits, prior to the enactment of the SIJ Amendment. There is no ongoing application for INS benefits comparable to the attorney fees sought in the PLRA. Furthermore, several courts in analyzing the effects of immigration statutes have found the application of immigration benefits to be the appropriate reference point for determining retroactively, rather than the INS processing of the immigration benefits. For example, in *Goncalves v. Reno, Henderson v. INS*, *Sandoval v. Reno*, and *Mayers v. INS*, the First, Second, Third and Eleventh Circuits all found that section 440(d) of the AEDPA which deprived convicted felons of discretionary relief from deportation could not apply to those aliens who had applied for the benefits prior to the enactment of § 440(d) without resulting in a retroactive effect. *Goncalves v. Reno*, 166 F.3d 225; *Henderson v. INS*, 175 F.3d 1289; *Sandoval v. Reno*, 157 F.3d 106; *Mayers v. INS*, 144 F.3d 110. Another quite obvious reason to use the application for SIJ benefits as the reference point of the retroactivity analysis is because section 113 amends the portion of the INA related to *application* of and eligibility for SIJ benefits. Thus, the most natural retroactivity reference point is to examine whether the Amendment has a retroactive effect on applications pending at the time the Amendment was

enacted. Finally, the Government's argument makes no practical sense. If the appropriate retroactivity reference point was, as suggested, the granting of SIJ benefits upon juveniles, there would be no issue at dispute. The SIJ statute and the section 113 Amendment provide no statutory mechanism for depriving SIJ beneficiaries of their permanent residence or SIJ status. Once juveniles are granted SIJ status and become permanent residents, that immigration status cannot be taken away from them under any statutory provision of the INA relevant to this case. Thus, the INS has no statutory authority under the SIJ Amendment to go back and review prior SIJ beneficiaries and revoke their SIJ permanent residence status. It goes without saying that the SIJ Amendment cannot be applied to immigrants who have already been granted SIJ status, because the SIJ Amendment does not authorize such action. The entire case involves a moot issue, if as the Government suggests, the appropriate retroactivity reference point is whether the juvenile has been granted permanent residence status as a Special Immigrant Juvenile. Clearly, the appropriate reference point for any retroactivity analysis is the application for SIJ benefits, rather than the granting of SIJ benefits.

Turning to the merits of the "retroactive effect" analysis, the Court finds that the Amendment cannot be imposed on SIJ applications pending at the time of enactment without resulting in a retroactive effect. Applying the SIJ Amendment to applications pending at the time of enactment both impermissibly attaches new legal consequences to events completed prior to the Amendment and upsets settled expectations reasonably held by the Plaintiffs. The SIJ Amendment imposes two significant additional requirements in order to obtain the benefit of SIJ status which did not exist at the time Plaintiffs filed their applications. First, it requires a finding that the applicant have been neglected, abandoned or abused. In contrast, under the original SIJ

26

definition, the only requirement was a showing that the applicant was eligible for foster care and it was in the applicant's best interests to remain in the United States. Second, the 1997 SIJ Amendment requires the Attorney General to consent both to the juvenile court's dependency order and to juvenile court jurisdiction in certain cases. Before the Amendment, no such Attorney General approval was required. Thus, SIJ status is now an immigration benefit available only with the discretion of the Attorney General. The result of these changes is that now applicants must make a greater factual showing and seek a favorable exercise of INS discretion. This shift from non-discretionary to discretionary relief has certainly impaired the legal rights possessed by Plaintiffs when they filed their SIJ applications and imposed new duties upon the Plaintiffs with respect to the applications already completed. As a result of the Amendment, the juvenile courts' dependency orders and determinations that it is in the Plaintiffs' best interests to remain in the United States, and the applications completed by the Plaintiffs are rendered legally insufficient to establish SIJ eligibility. Applying the SIJ Amendment to applications pending at the time enactment would create a situation where juveniles, who had reasonably planned on remaining in and building a life in the United States based on their legal eligibility for SIJ status, would suddenly face deportation without regard to their present and future interests and the interests of the families and community ties they have created in the United States. Several circuits court of appeals have found a retroactive effect to exist where the AEDPA § 440(d) took away a form of discretionary relief from deportation once available to certain convicted felons. *See Sandoval v. Reno*, 166 F.3d 225; *Mayers v. INS*, 175 F.3d 1289; *Henderson v. INS*, 157 F.3d 106; *Goncalves v. Reno*, 144 F.3d 110. Here, the impact is even more significant in that the SIJ Amendment transforms what was once an entitlement of SIJ status into a discretionary form of relief and

imposes additional burdens to meet this new discretionary form of relief.

The Government contends that no retroactive effect exists, no new legal consequences are being attached to completed events, and no settled expectations are being disrupted by applying the new SIJ provision to applications pending at the time the Amendment was enacted. Specifically, the Government argues that applying section 113 would not take away anyone's status as a lawful permanent resident. The Government next points to the SIJ Amendment Conference Report as proof that the SIJ status was never intended to apply to people in Plaintiffs position. They contend that without having been victims of abuse, neglect or abandonment the Plaintiffs were never the intended beneficiaries of SIJ status and there can be no settled expectations arising from mistreatment by a third party.

The Court is not persuaded by the Government's arguments. First, they are incorrect in their assertion that the Plaintiffs had no settled expectations of benefitting from SIJ status or that no new legal consequences will result. Settled expectations of INS benefits do not solely arise when an immigrant is granted permanent residence status. At the time the Plaintiffs applied for SIJ status there was no required showing of abuse, neglect or abandonment. The statutory language and INS practice made clear the Plaintiffs were statutorily eligible for SIJ benefits. The Plaintiffs applied for these SIJ benefits with the knowledge that they were eligible for such benefits and with the belief that they would be granted these benefits upon completion of their applications. Based upon these beliefs, the Plaintiffs settled into a new life in the United States, with new families, new community ties and new expectations for a future in this country. Now they are being told that their applications are legally insufficient, that the juvenile court determination that it was in their best interest to remain in this country is not dispositive, and that

the Attorney General now holds discretion over what was once an assured receipt of SIJ benefits. In addition, the Court remains unconvinced that Congress always intended SIJ status to benefit only abused, neglected or abandoned children without having explicitly limited the SIJ statute accordingly. Nonetheless, even if the Government is correct in its assertion that the SIJ status was always intended for such mistreated juveniles, it is incumbent upon Congress, rather than the INS or the Court to take away such settled expectations of the Plaintiffs. The Plaintiffs had no indication either from the original SIJ definition or from INS practice and procedure that the SIJ status was always intended for mistreated children. To impute such knowledge and such burdens of proof upon juveniles who reasonably had expected their applications to be granted would result in a divestment of their substantive rights, attach new legal consequences to completed transactions and disrupt their settled expectations.

The SIJ Amendment cannot be applied to Plaintiffs' SIJ petitions without resulting in a retroactive effect. Congressional intent as manifested in the plain language of the SIJ Amendment and the legislative history is clear that the SIJ Amendment should only be applied prospectively. Accordingly, Plaintiffs' SIJ petitions and applications for adjustment of status should be processed pursuant to the SIJ statute that existed prior to the 1997 Amendment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Yue Yu, et. al.'s Motion for Summary Judgment filed September 15, 1999 **[Doc. No. 56]** is hereby **GRANTED** and Defendants' Douglas Brown, et. al.'s Cross-Motion for Summary Judgment September, 1999 **[Doc. No. 58]** is hereby **DENIED**.

Dated this 26th day of April, 2000.

_____
**MARTHA VÁZQUEZ**
**U. S. DISTRICT COURT JUDGE**

Attorneys for Plaintiffs
Richard Hughes
John Sullivan
John Lawit

Attorneys for Defendant
Michael Hoses
Hugh Mullane